# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STASCAVAGE et al., | : |
| Plaintiffs, | : |
| v. | : 3:11-CV-0772 |
| | : (JUDGE MARIANI) |
| BOROUGH OF EXETER et al., | : |
| Defendants | : |

## MEMORANDUM OPINION

### I. Introduction

Plaintiffs John and Patricia Stascavage ("Stascavage Plaintiffs") and Daniel and Tami Broda ("Broda Plaintiffs") filed a four-count Complaint against Defendants the Borough of Exeter, Richard Murawski, individually and in his capacity as a member and President of Exeter Borough Council, Dominick Pepe, individually and in his capacity as Zoning Officer for Borough of Exeter (collectively, "Exeter Defendants"), Casterline Trucking, Inc., Edward Casterline, Sr., Ronald Casterline, and Edward Casterline, Jr (collectively, "Casterline Defendants").

Counts I through III are against all Defendants for alleged violations of Plaintiffs' Substantive Due Process rights and conspiracy to deprive Plaintiffs of their Substantive Due Process rights under 28 U.S.C. §§ 1983 and 1985, for retaliation under the First Amendment, and for violations of § 501 of the Exeter Borough Zoning Ordinance. Count IV is against Casterline Defendants only for Nuisance. This Court has jurisdiction over this

action pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1343, and 1367 and venue is proper in the Middle District of Pennsylvania under 28 U.S. C. § 1391(b).

For the reasons set forth below, the Court will dismiss Counts I and II without prejudice and grant Plaintiffs leave to amend their Complaint. Furthermore, the Court will reserve its ruling on Defendants' motions to dismiss punitive damages claims against them pending the filing of Plaintiffs' Amended Complaint. Finally, the Court will deny Defendants' motion to decline to exercise supplemental jurisdiction on Plaintiffs' state law claims in Counts III and IV.

## II. Factual Allegations

Defendants Edward Casterline, Sr., Ronald Casterline, and Edward Casterline, Jr., own and operate a freight trucking business, Defendant Casterline Trucking, Inc. The Complaint alleges that the above-named Defendants are responsible for "repeated and continuing violations of the Exeter Borough Zoning Ordinance." (Doc. 1, ¶ 19). Plaintiffs' residences and Defendant Casterline Trucking, Inc. are located within an R-1 single family residence zone. (*Id.* at ¶¶ 21-24).

The vehicles of Defendant Casterline Trucking travel freely throughout Plaintiffs' neighborhood. (*Id.* at ¶ 26). Plaintiffs allege that Casterline Defendants "drive, park, idle, repair, maintain, and otherwise operate and utilize these vehicles in and around the immediate area of their operations" in Plaintiffs' neighborhood. (*Id.* at ¶ 27). Plaintiffs allege that Casterline Defendants are also responsible for overnight parking and all-hours

operations of the company's vehicles. (*Id.* at ¶ 30). According to Plaintiffs, Casterline Defendants drive on and run over Plaintiffs' lawns, tree lines, curbs, and shrubbery, which has resulted in repeated repairs at Plaintiffs' expense. (*Id.* at ¶ 28). Since 1987, Plaintiffs have repeatedly requested enforcement of the zoning ordinance and have filed complaints with each Zoning Officer to hold the position. (*Id.* at ¶¶ 31, 33). "To date," these requests and complaints have been ignored. (*Id.* at ¶ 34).

In addition to these complaints, in August 1987, Stascavage Plaintiffs filed a written complaint protesting a commercial-grade garage being built for business purposes by Casterline Defendants. (*Id.* at ¶¶ 35-36). This complaint was directed to the then-Exeter Borough Zoning Officer, Michael Balent. Again, no action was taken. (*Id.* at ¶¶ 37-38). Defendant Murawski allegedly maintained a business and/or personal relationship with the Casterline Defendants, and he allegedly took part in the construction of the garage. (*Id.* at ¶¶ 39, 40). After the garage was built, Murawski obtained the position of Exeter Borough Council President despite Plaintiffs' "opposition." (*Id.* at ¶¶ 41-43). Plaintiffs claim that "Casterline Defendants have continually and repeatedly conspired with and/or colluded with and/or acted jointly with the Borough Defendants in order to preclude the enforcement of the Exeter R-1 Ordinance." (*Id.* at ¶ 45; *see also* ¶ 17). Finally, Plaintiffs complain that the "noise, smoke, odor, discharges, heavy vibrations, and unsightly appearance of the tractors and tractor trailers" have caused them harm and distress for over twenty years. (*Id.* at ¶

3

46). As a result, Plaintiffs filed their Complaint on April 21, 2011. Thereafter, Exeter and Casterline Defendants moved to dismiss the Complaint. (Docs. 11, 17).

### III. Standard of Review on Motions to Dismiss

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, bu may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal,* 129 S. Ct. at 1950. Thus, a complaint must "show" an entitlement for relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Phillips v. Co. of*

4

*Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. At 1949. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler*, 578 F.3d at 210-11.

### IV. Analysis

#### A. Count I: Substantive Due Process under 42 U.S.C. §§ 1983, 1985

##### 1. Substantive Due Process

Plaintiffs bring their substantive due process claim under the Fourteenth Amendment via § 1983 against all Defendants. Thus, the Court must determine whether "the behavior of a governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003) (abandoning the less stringent "improper motive" test in light of the Supreme Court's holding in *Lewis*). "[E]xecutive action violates substantive due process only when it shocks the conscience but [ ] the meaning of this standard varies depending on the factual context." *United Artists*, 316 F.3d at 399-400. A defendants "actions or inactions" may give rise to conduct that shocks the conscience. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). The "shocks the conscience" standard is

"designed to avoid converting federal courts into super zoning tribunals." *Id.* Thus, a "bad-faith violation of state law remains only a violation of state law," and is "is insufficient to state a substantive due process claim." *United Artists*, 316 F.3d at 402 (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992)).

For the purpose of addressing Defendants' motions, the Court will assume that this count implicates Plaintiffs' fundamental right to property.[1] Defendants argue that, even accepting all of Plaintiffs' factual allegations as true, none of the actions or inactions allegedly taken by Defendants amounts to conscience-shocking behavior. Plaintiffs respond by citing *MARJAC, LLC v. Trenk*, 380 F. App'x 142 (3d Cir. 2010) and *Maple Prop., Inc. v. Twp. of Upper Providence*, 151 F. App'x 174 (3d Cir. 2005), both of which are inapposite.

In *MARJAC*, the Third Circuit found that the plaintiffs had a viable substantive due process claim in connection with the defendants' selective enforcement of zoning laws. The basis of the Circuit's holding was that there was evidence in the record showing that the defendants had been motivated by discriminatory animus based on ethnic bias against the plaintiffs who were of Italian heritage.[2] Thus, the Circuit reversed the district court's grant of summary judgment in favor of the defendants. 380 F. App'x at 147 ("Depending on the gravity, context, and surrounding circumstances, selective enforcement motivated by ethnic bias may constitute arbitrary conduct capable of shocking the conscience."). Here, there

---

[1] This assumption is generous toward Plaintiffs considering that nowhere in the Complaint is there an allegation of an improper taking by Defendants or an allegation that Plaintiffs have been denied the use and enjoyment of their property.

[2] There was evidence that the defendants had stated the plaintiffs were connected to the Mafia and were financed with the Mafia's money. Furthermore, one defendant had allegedly commented that "Italians aren't the best of people, they're connected to the mob." *Id.* (internal quotation marks omitted).

6

are no allegations of racial or ethnic bias on the part of Defendants against Plaintiffs allegedly anywhere in the Complaint.

*Maple* outlined the principle that "[s]ome land use decisions are so egregious that no amount of 'process' can suffice to honor and restore an individual's constitutional property rights." *Id.* at 179 (citing *United Artists*, 316 F.3d at 401-02). "[C]orruption, self-dealing, or a concomitant infringement on other fundamental individual liberties, resulting in harms that cannot be adequately rectified by pre- or post-deprivation proceedings" are examples of egregious conduct that shocks the conscience. *Id.* The case entailed a suit between a real estate developer who claimed that the township's amendment of a zoning ordinance to preclude retail development violated his procedural and substantive due process rights. However, the Third Circuit held that the developer was accorded sufficient procedural due process in connection with the amendment to the zoning ordinance and even if the conduct of the township was improper, it was not sufficiently egregious to constitute substantive due process violation. *Id.* at 180.

> There is no evidence that individual members of the Township Board of Supervisors enjoyed financial gain from the ordinance or that the rezoning decision otherwise redounded to their personal advantage. . . . To the contrary, this case involves a fairly run-of-the-mill zoning dispute. Maple asserts that the ordinance was irrational in light of land use goals, was passed "in the dark" and without a "deliberative process," and was targeted selectively at Maple to preclude the company from making beneficial use of its property. Even if true, these allegations do not "shock the conscience." We have previously recognized that the politics and animosities that often animate local decision-making are not matters of constitutional concern. The conduct of officials in this case may have been "unfair" or "improper" from Maple's perspective, but

there is no evidence of the patently egregious behavior recognized in prior cases to constitute a substantive due process claim.

*Id.* at 179-180 (internal citations omitted).

Thus, it is clear that Plaintiffs must allege facts showing more than an improper motive behind Defendants' inactions in enforcing the zoning ordinance. As stated before, the Complaint is devoid of any allegations of discriminatory animus based on racial or ethnic bias. To support a substantive due process claim, then, Plaintiffs must allege facts showing self-dealing or corruption. The closest Plaintiffs come to making such an assertion is the statement that "Defendant Murawski has maintained a business and/or personal and/or amicable relationship with the Casterline Defendants," and he "took part in the construction of the above-mentioned garage." (Doc. 1, ¶¶ 39, 40).

First, there is no allegation against Defendant Pepe of an improper relationship with Casterline Defendants. Based on this omission alone, Defendant Pepe is entitled to dismissal of this claim against him. Second, Plaintiffs allege in paragraphs 41 and 42 of the Complaint that: "Plaintiffs opposed the construction, dimensions, and non-residential use of said garage and filed a formal complaint in opposition to the same. Thereafter, Murawski obtained the position of Exeter Borough Council President." The facts alleged indicate that Murawski was elected to President of the Borough Council *after* the Casterline garage was constructed. Unless he was a Council Member before the construction of the garage, he was acting in his private capacity (and not as a state actor) at the time the garage was

8

built.[3] Third, the allegations of a relationship between Defendant Murawski and Casterline Defendants are conclusory and unsupported by any factual details of whether Defendant Murawski reaped any sort of benefit, financial or otherwise, from the garage's construction. Apart from these two paragraphs in the Complaint, there are no facts alleged which would show a pattern of self-dealing between Murawski and Casterline Defendants. Because there are insufficient allegations against Exeter Defendants, Casterline Defendants alone cannot be liable for violations of substantive due process brought through § 1983.

Absent any factual allegations of self-dealing, corruption, or discriminatory animus, the acts of Casterline Defendants in allegedly driving over Plaintiffs' property and damaging tree limbs and the acts of Exeter Defendants' alleged failure to respond to Plaintiffs' complaints are not so egregious as to shock the conscience.

Therefore, the Complaint falls far short of stating a claim for which relief can be granted on Plaintiffs' substantive due process claims against any Defendants. The Court will not act as a "super zoning tribunal," and will dismiss this claim without prejudice. *Eichenlaub*, 385 F.3d at 285. In addition, the Court will grant Plaintiffs leave to file an Amended Complaint that alleges facts showing that Defendants Murawski or Pepe committed official misconduct by engaging in self-dealing, bribery, kick-backs, or other forms of corruption in connection with their dealings with Casterline Defendants during the relevant time period.

---

[3] The Court notes that the Complaint does not state when Defendants Murawski and Pepe took office, further preventing the Court from determining whether either acted inappropriately in allegedly failing to enforce the zoning laws.

### 2. Conspiracy to Deprive Plaintiffs of Substantive Due Process

To state a claim for relief under the federal conspiracy statute 42 U.S.C. § 1985(3), Plaintiffs must show "that the state was somehow involved in or affected by the conspiracy." *United Bhd. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 833, 103 S. Ct. 3352, 77 L.E.2d 1049 (1983). A plaintiff must allege, (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). Though § 1985(3) can reach private as well as public conspiracies, a plaintiff "must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135.

Defendants correctly point out that Plaintiffs failed to allege facts that show a class-based conspiracy. Rather, Plaintiffs claim in a conclusory fashion that "Defendants were conspirators engaged in a scheme and conspiracy and/or joint activity designed and intended to deny and deprive Plaintiffs of their rights." (Doc. 1, at ¶ 51). The most the Court can glean from the Complaint is that the four plaintiffs are neighbors who have protested various actions taken by Defendants. Even if the Court takes the broadest of views of the Complaint and were to thereby discern an allegation of discrimination based on political

bias, Plaintiffs still have failed to support a conspiracy claim. "[U]nlike discrimination against a class on the basis of race, sex, or mental retardation, discrimination on the basis of political affiliation is not, as a matter of law, discrimination so invidious such that § 1985(3) would apply." *Farber*, 440 F.3d at 135.

Whether on the basis of failure to allege any facts supporting the existence of a conspiracy or on the basis of failure to allege class-based discrimination,[4] the Complaint fails to state a claim upon which relief can be granted. Therefore, the Court will dismiss without prejudice Plaintiffs' conspiracy claim and grant Plaintiffs leave to amend their Complaint to allege facts supporting the existence of a conspiracy amongst Exeter and Casterline Defendants to deprive Plaintiffs of their substantive due process rights.

## B. First Amendment Retaliation

For a valid First Amendment retaliation claim under § 1983 against state actors, a "plaintiff must prove that (1) he engaged in constitutionally protected activity; (2) the government responded with retaliation; (3) the protected activity caused the retaliation." *Eichenlaub*, 385 F.3d at 282. However, a defendant may defeat the plaintiff's case "by showing that it would have taken the same action even in the absence of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). Furthermore, "[i]t is only intuitive that for protected conduct to be a substantial or motiving factor in a

---

[4] In their brief in opposition to Casterline Defendants' motion to dismiss, Plaintiffs allege that they have adequately alleged a conspiracy claim through § 1983 as opposed to § 1985. (Doc. 20, at 11). However, as stated above, they have failed to allege any facts supporting their conclusions that Defendants conspired to deprive them of their substantive due process rights.

11

decision, the decisionmakers must be aware of the protected conduct." *Id.* Finally, temporal proximity is "relevant to establishing a causal link between protected conduct and retaliatory action." *Rauser v. Horn,* 241 F.3d 330, 334 (3d. Cir. 2001).

A plaintiff must identify the protected activity that allegedly caused the retaliation. *Eichenlaub,* 385 F.3d at 282. Constitutionally protected activities include freedom of speech and petitioning the Government for a redress of grievances. U.S. CONST. AMEND I. Plaintiffs claim that they "opposed" the construction, dimensions and use of the garage owned by the Casterline Defendants, and they "opposed" the election of Defendant Murawski.[5] (Doc. 1, ¶¶ 41, 43). However, Plaintiffs do not provide detail on when or how they engaged in such protected speech. Without more factual allegations, the Court cannot determine whether Plaintiffs engaged in protected speech for the purposes of this analysis. Furthermore, Plaintiffs must allege that Defendants were aware of their protected activity (*i.e.,* that Plaintiffs opposed the building of the garage and Defendant Murawski's election). Finally, because of the above deficiencies, Plaintiffs have failed to allege a causal link between the alleged protected speech and retaliatory conduct. There are no factual allegations as to when Defendants Murawski and Pepe were elected, when Plaintiffs voiced their opposition to Murawski's election or the garage's construction, when (other than 1987) they filed

---

[5] Though Plaintiffs did not identify it as protected speech in Count II, they argue that filing a public complaint with the Borough in 1987 and afterwards also constituted protected speech. (Doc. 18, at 10).

complaints with the Zoning Council, and when the deliberate inaction by the Borough occurred.[6]

Plaintiffs may well have a cause of action under this Count, but at this time, they have not presented sufficient factual allegations to the Court to survive Defendants' motions to dismiss. Because (1) the Court cannot determine whether Plaintiffs engaged in protected speech, (2) Plaintiffs have not alleged that Defendants were aware of the alleged protected speech, and (3) there are insufficient dates to show any sort of temporal proximity or causal link between Plaintiffs' protected speech and Defendants' alleged retaliation, the Court will dismiss without prejudice this count for failure to state a claim upon which relief can be granted and will simultaneously grant Plaintiffs leave to amend Count II.[7]

### C. Casterline Defendants' Motion to Dismiss Counts III and IV

Because the Court will grant Plaintiffs leave to amend Counts I and II, it cannot decline to exercise supplemental jurisdiction on the state law claims in Count III and IV as Defendants wish and will deny Defendants' motion on these claims.

### D. Statute of Limitations

Furthermore, because the Court dismisses without prejudice Counts I and II for failure to state a claim for which relief can be granted, it does not address Defendants'

---

[6] Plaintiffs also allege that Exeter and Casterline Defendants "conspiratorially and/or in joint action therewith, retaliated against Plaintiffs as a result of their opposition to the construction of the garage and Murawski's election." (Doc. 1, ¶ 62). Insofar as this is a claim of conspiracy to retaliate under the First Amendment, the Court reiterates that there are no facts alleged in support of any conspiracy amongst Defendants.

[7] The Court has not distinguished between Casterline (private) and Exeter (public) Defendants in its analysis simply because the Complaint is so deficient in its pleading. Had the Complaint been supported with more factual detail, separate analyses likely would have been necessary.

statute of limitations argument or Plaintiffs' continuing violations doctrine response. In their Amended Complaint, Plaintiffs must allege facts showing that Defendants committed an act in violation of their rights within the two-year period preceding the filing of the Complaint. *See City of Rancho Palos Verdes v. Abrams*, 514 U.S. 113, 124, 125 S. Ct. 1453, 161 L.Ed.2d 316 (2005); 42 PA. CONS. STAT. § 5524. The only allegation that could be construed as a qualifying act within the two years preceding the Complaint is paragraph 34, which states that "[t]o date," Defendants have failed to respond to Plaintiffs' grievances. When amending their Complaint, Plaintiffs also should take the opportunity to cure any defects that would subject them to a statute of limitations challenge.

### E. Motion to Dismiss Punitive Damages against Borough of Exeter Defendants

In addition, the Court will reserve ruling on Defendants' motions to dismiss the claims for punitive damages against them pending Plaintiffs' filing of an Amended Complaint. However, the Court notes that Plaintiffs have conceded that punitive damages are unavailable against Defendant Borough of Exeter or against Defendants Murawski and Pepe in their official capacities. (Doc. 18, at 12).

### V. Conclusion

For the reasons set forth above, the Court will grant Defendants' motions to dismiss Count I for failure to state a claim upon which relief can be granted and will dismiss the claims therein (substantive due process and conspiracy) without prejudice. Also, the Court will dismiss Count II (First Amendment retaliation claim) without prejudice and will grant

14

Plaintiffs leave to amend both Counts I and II. The Court will reserve its ruling on the issue of punitive damages until Plaintiffs' file an Amended Complaint and will deny the motion to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in Counts III and IV. A separate Order follows.

Robert D. Mariani
United States District Judge