# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STASCAVAGE et al., | : |
| Plaintiffs, | : |
| v. | : 3:11-CV-0772 |
| | : (JUDGE MARIANI) |
| BOROUGH OF EXETER et al., | : |
| Defendants | : |

## MEMORANDUM OPINION

### I. Introduction

Before the Court are Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (Docs. 27, 29). For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motions.

### II. Factual Allegations and Procedural History

Following the Court's disposition of Defendants' earlier motions to dismiss (Docs. 11, 17), Plaintiffs filed an Amended Complaint (Doc. 26). Defendants again filed Motions to Dismiss (Docs. 27, 29) asserting that Plaintiffs had failed to cure the deficiencies from the original Complaint.

The Amended Complaint removed Plaintiffs' earlier claim based on Substantive Due Process and alleged additional facts in support of the three remaining counts. As such, the Amended Complaint asserted causes of action for First Amendment Retaliation and 42 U.S.C. § 1983, violations of § 501 of the Exeter Borough Zoning Ordinance, and Nuisance.

Defendants Edward Casterline, Sr., Ronald Casterline, and Edward Casterline, Jr., own and operate a freight trucking business, Defendant Casterline Trucking, Inc. (Amended Complaint, "Am. Compl.", Doc. 26, at ¶ 18). The Amended Complaint alleges that the above-named Defendants are responsible for "repeatedly commit[ing] violations of the Exeter Borough Zoning Ordinance" from 1987 until July 23, 2012. (*Id.* at ¶ 25). Plaintiffs' residences and Defendant Casterline Trucking, Inc. are located within an R-1 single family residence zone (*Id.* at ¶¶ 19-23) which has been in place since 1965. (*Id.* at ¶ 24).

"In 1987, the Casterline Defendants secured a permit to build a commercial-grade garage on one of the properties above-mentioned, where the Casterline Defendants intended to and currently do conduct business-related activities." (*Id.* at ¶ 26). "Thereafter, on August 7, 1987," Stascavage Plaintiffs "filed a formal written complaint protesting the garage, since the garage is/was located in an R-1 zone," (*id.* at ¶¶ 27, 51) and directed the complaint to then-Exeter Borough Zoning Officer, Michael Balent.[1] (*Id.* at ¶ 28). After receiving no response from Balent or the Borough, Plaintiffs "appealed the issuance of the zoning permit to the Zoning Board of Exeter Borough." (*Id.* at ¶¶ 29-30).

---

[1] In addition, Plaintiffs:

publicly opposed the Casterline Defendants' construction and non-residential use of said garage in 1987 and 1988 by: (1) filing a formal written complaint; (2) circulating and submitting a written petition to the Exeter Zoning Board; (3) organizing and collaborating with neighbors; (4) testifying at hearings; (5) appealing the Zoning Board's erroneous decision; (6) contacting and speaking with the local media such WNEP-TV and the Sunday Independent newspaper; and (7) submitting letters to the local newspapers.

(*Id.* at ¶ 52).

Ultimately, after an initial decision by the Zoning Board was reversed by Judge Gifford Cappellini of the Luzerne County Court of Common Pleas, the Zoning Board "issued an Amended Decision which stated that 'the building [garage] is not to be used in any manner whatsoever for any type of commercial purposes.'" (*Id.* at ¶¶ 33).

Despite this Amended Decision and the Zoning Ordinance, Casterline Defendants' vehicles continued to travel freely throughout Plaintiffs' neighborhood. (*Id.* at ¶ 34). Plaintiffs allege that Casterline Defendants "drive, park, idle, repair, maintain, and otherwise operate and utilize these vehicles in and around the immediate area of their base of operations." (*Id.* at ¶ 35). According to Plaintiffs, Casterline Defendants, their employees, and agents drive on and run over Plaintiffs' lawns, tree lines, curbs, and shrubbery, which have resulted in repeated repairs at Plaintiffs' expense. (*Id.* at ¶ 36). Also, Casterline Defendants, their employees, and agents "are/were responsible for overnight parking and all-hours operation of the tractors and/or tractor trailers" in contravention of the Zoning Ordinance and Amended Decision. (*Id.* at ¶ 38).

Since 1987, Plaintiffs have repeatedly requested enforcement of the Zoning Ordinance and Amended Decision and have filed complaints with each Zoning Officer to hold the position. (*Id.* at ¶ 39). Plaintiffs allege that multiple Zoning Officers were aware of their complaints either because Plaintiffs orally complained to the Zoning Officers[2] in person or the Officers received correspondence from the Borough's Solicitor regarding Plaintiffs'

---

[2] In response to Mrs. Stascavage's oral complaint, Defendant Pepe is alleged to have responded, "Why should I help you?" (*Id.* at ¶ 42).

3

complaints, as recently as September 2011. (*Id.* at ¶¶ 40-43). Furthermore, Plaintiffs have complained of Casterline Defendants' violations of the Zoning Ordinance and Amended Decision to the Borough Police Department at least fourteen times from 1999 to 2009.³ (*Id.* at ¶ 44). Finally, Plaintiffs have attended numerous Borough Council meetings to complain about Casterline Defendants' non-compliance with the Ordinance and Amended Decision. (*Id.* at ¶ 45). Despite their efforts to be heard, "as of August 10, 2012, Plaintiffs' complaints and grievances . . . have gone intentionally unanswered." (*Id.* at ¶ 46; *see also* ¶ 59).

Defendant Murawski allegedly maintained a business and/or personal relationship with the Casterline Defendants, and he allegedly took part in the construction of the garage. (*Id.* at ¶¶ 47, 53). After the garage was built and over Plaintiffs' objections, Defendant Murawski obtained the position of Exeter Borough Council President in January 1988 and served until December 2011. (*Id.* at ¶¶ 48-52, 54). Defendants Murawski and Casterline Defendants allegedly were politically aligned and "actively competed with a political organization" in which Plaintiffs were involved. (*Id.* at ¶¶ 48-49). Plaintiffs actively campaigned against Defendant Murawski's elections to the Borough Council by: "(1) working the polls in support of Murawski's opponent(s); (2) contacting Exeter residents to support Murawski's opponent(s) . . . ; (3) displaying the political sign(s) of Murawski's opponents on their property; and (4) politically supporting candidates for Exeter council that

---

³ The specific dates are: August 30, 1999; July 10, 2000; October 29, 2000; October 30, 2000; September 4, 2005; December 27, 2005; December 30, 2005; February 9, 2006; July 28, 2007; June 2, 2008; July 8, 2009; April 4, 2009; April 25, 2009; and July 13, 2009.

4

competed with the political association of Murawski and the Casterline Defendants." (*Id.* at ¶ 50).

Plaintiffs claim that because of their opposition to Defendant Murawski's election and Casterline Defendants' failure to adhere to the Zoning Ordinance and Amended Decision, Defendants "have refused to take any action" on Plaintiffs' complaints. (*Id.* at ¶ 56). Plaintiffs further allege that "Casterline Defendants have continually and repeatedly conspired with and/or colluded with and/or acted jointly with the Borough Defendants in order to preclude the enforcement of the Exeter R-1 Ordinance." (*Id.* at ¶ 57; *see also* ¶ 17). Finally, Plaintiffs complain that the "noise, smoke, odor, discharges, heavy vibrations, and unsightly appearance of the tractors and tractor trailers" have caused them harm and distress for over twenty years. (*Id.* at ¶ 58).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d

5

203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal*, 556 U.S. at 678. Thus, a complaint must "show" an entitlement for relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. See *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler*, 578 F.3d at 210-11.

### IV. Analysis

After careful review of Plaintiffs' Amended Complaint, it is now clear that any events giving rise to Plaintiffs' First Amendment Retaliation claims are time-barred to the extent that they occurred before April 21, 2009, and the "continuing violations" doctrine does not toll the statute of limitations.

6

## Statute of Limitations

Plaintiffs bring their First Amendment Retaliation claims under 42 U.S.C. § 1983. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Id.* (citing 42 PA. CONS. STAT. § 5524(2)). "Federal law governs a cause of action's accrual date. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal citations and quotation marks omitted).

The "continuing violations" doctrine, however, is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (holding that the township's imposition of two liens against the plaintiffs' property at least six years before the plaintiffs filed suit did not constitute a "continuing violation" of the plaintiffs' substantive due process rights). As such, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (internal citations and quotation marks omitted).

> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is more than the occurrence of isolated or sporadic acts. Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated

7

incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of degree of permanence is the most important of the factors.

*Id.* (internal citations and quotation marks omitted).

For the purpose of analyzing the timeliness of the claims here presented, the Court notes the Third Circuit's statement in *Cowell* that because each of the defendants' acts was "an independent violation of [the plaintiffs'] substantive due process rights," the plaintiffs should have brought "a new § 1983 claim with respect to these alleged harassments instead of trying to tack them on to their existing claim." *Cowell*, 263 F.3d at 294-95.

The Amended Complaint alleges that Casterline Defendants obtained a permit to build a garage in their residentially-zoned neighborhood in 1987. Thereafter, despite Plaintiffs' numerous and vocal attempts to have Casterline Defendants abide by the Zoning Ordinance and Amended Decision, Borough Defendants did nothing to provide Plaintiffs relief. The Amended Complaint is replete with references to Defendants' alleged failures to enforce the Zoning Ordinance and Amended Decision (Am. Compl. at ¶¶ 29, 46, 55, 56, 59): (1) The "Exeter Borough took [no] action to remedy the grievances of the Stascavages or to act on the formal complaint." (*Id.* at ¶ 29); (2) "[A]s of Plaintiffs' complaints and grievances . . . have gone intentionally unanswered." (*Id.* at ¶ 46; see also ¶ 59); (3) Defendants' knowledge of Plaintiffs' protected speech activities "formed the basis of [their] refusal to enforce Exeter R-1 Ordinance and the Zoning Board's Amended Decision." (*Id.* at

8

"The Zoning Officers, including Pepe, and the Exeter Borough have refused to take any action. . . ." (*Id.* at ¶ 56).

As it is clear from the Amended Complaint, Plaintiffs were well aware that their complaints about Casterline Defendants allegedly had fallen on deaf ears. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003) (holding that the continuing violations "theory does not apply when plaintiffs are aware of the injury at the time it occurred."). Plaintiffs' retaliation claims were related to discrete and concrete violations of the Zoning Ordinance and Amended Decision by the Casterlines, and each time Borough Defendants allegedly retaliated against Plaintiffs for their complaints by deliberately ignoring them, Plaintiffs could have filed suit. *See Weis-Buy v. Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (holding that "the statute of limitations must accrue from the time that the trustee openly repudiates [its] duties," and that such repudiation puts plaintiffs "on notice that the trustees were in breach of their fiduciary duties."). Therefore, any allegations of retaliation for complaints relating to Casterline Defendants' alleged violations of the Zoning Ordinance and Amended Decision that Plaintiffs made before April 21, 2009 are time-barred.

The Court in *Cowell* also concluded that "the plaintiffs were aware of the wrongfulness of the liens when the liens were imposed in 1992 and 1993. Therefore, the plaintiffs should have brought a claim to strike the liens in state court and filed a § 1983 claim within the applicable limitations periods." 263 F.3d at 295. Allowing plaintiffs to bring

a claim based on the imposition of the liens "would be unfair to the Township and contrary to the policy rationale of the statute of limitations." *Id.* Similarly, allowing Plaintiffs here to allege facts dating back twenty-five years would be unfair to Borough Defendants when Plaintiffs clearly could have brought suit as early as 1990 and any continued wrongs could have been averted.[4]

Every time Casterline Defendants allegedly violated the Zoning Ordinance and Amended Decision, Plaintiffs could have complained to Borough Defendants about the Casterlines' discrete violations. Therefore, each time Borough Defendants allegedly retaliated against Plaintiffs by deliberately ignoring Plaintiffs' complaints about Casterline Defendants' discrete violations, Borough Defendants engaged in separate and independently actionable violations of Plaintiffs' First Amendment rights. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within [two years] of the date of the act or lose the ability to recover for it."); *Cowell*, 263 F.3d at 295 (citing to *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) and "noting that the denial of the permit [in *Sameric*] gave rise to an independent cause of action and should have been pursued as such. Thus, [in *Sameric*] we held that the continuing violations doctrine could not be applied

---

[4] Because the Court concludes that any facts giving rise to a First Amendment Retaliation occurring before April 21, 2009 are time-barred, the Court does not explicitly decide whether a deliberate, calculated, and retaliatory decision not to act can constitute an "affirmative act" for purposes of the "continuing violations" exception to the Statute of Limitations.

10

to revive the claim involving the permit denial."); *see also 287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 324 (3d Cir. 1996) (affirming the district court's dismissal of the plaintiff's takings claim filed in 1994 and declining to apply the "continuing wrong" doctrine because "[t]he Township has not committed an affirmative act since 1985," and the township's allegedly improper levy of commercial taxes on the plaintiff "year after year" was not an "affirmative act" which would constitute a "continuing wrong") (citing *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)).

### First Amendment Retaliation

The Court finds that Plaintiffs properly have alleged a failure to act as the basis for their First Amendment Retaliation claim. On a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment, "plaintiffs must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiffs have clearly alleged that they engaged in protected activities within the statute of limitations period by reporting Casterline Defendants' violations of the Zoning Ordinance and Amended Decision to the police (*id.* at ¶ 44),[5] Borough Council at public

---

[5] April 4, April 25, and July 13, 2009. "[T]he focus of the continuing violations doctrine is on affirmative acts of the defendants." *Cowell*, 263 F.3d at 293. Though the April 4, 2009 complaint falls outside of the statute of limitations, the allegedly deliberate decision not to respond could have occurred within the statute of limitations period.

11

council meetings in 2010 (*id.* at ¶ 45), complaining to Borough Zoning Officers (*id.* at ¶ 39, 41-43),[6] and by actively campaigning against Defendant Murawski's election from 2009 until Defendant Murawski retired in December 2011 (*id.* at ¶ 50).

There is also a causal link between Plaintiffs' protected activities and Defendants' failures to act because of the proximity in time between Plaintiffs' activities and Defendants' repeated inactions. Defendants, however, claim that such "retaliatory action" would not be "sufficient to deter a person of ordinary firmness from exercising his or her rights." In fact, Defendants' allegedly retaliatory inaction has not deterred Plaintiffs at all from continuing to complain about Casterline Defendants' alleged violations of the Zoning Ordinance and Amended Decision. Far from deterring Plaintiffs from engaging in protected activity, such inaction may have spurred Plaintiffs to speak out even more. (*See* Am. Compl. at ¶¶ 39-45, 50-52). However, the standard is not whether Plaintiffs have been deterred, but whether a person of ordinary firmness would have been deterred.

> Defendants claim that there was no retaliation because the Krisses were not actually deterred from doing anything and any action against the Krisses was *de minimis*. That the Krisses were not actually deterred from doing anything is irrelevant. In determining whether retaliation has occurred, we look to whether a person of ordinary firmness would have been deterred, not whether the particular plaintiff was deterred. *See Thomas*, 463 F.3d at 296; *see also Kounelis v. Sherrer*, 529 F.Supp.2d 503, 531 (D.N.J.2008)("The [Third Circuit] has never required that the plaintiff himself be deterred by the allegedly retaliatory action and it is an illogical requirement.").

---

[6] *E.g.*, February 23, 2010 letter to Defendant Pepe and Mrs. Stascavage's September 2011 oral complaint to Defendant Pepe.

12

*Kriss v. Fayette Cnty.*, No. 12-1156, 2012 WL 5816867, at *3 (3d Cir. Nov. 16, 2012). Therefore, Plaintiffs have alleged a cause of action against Borough Defendants for a First Amendment Retaliation claim to move forward.

### § 1983 Conspiracy

Despite having received a second opportunity to allege the existence of a conspiracy between Borough and Casterline Defendants, however, Plaintiffs again have failed to do so. "A section 1983 conspiracy claim requires [a showing] that two or more conspirators reached an agreement to deprive plaintiff of a constitutional right under color of law." *Dennis v. DeJong*, 867 F. Supp. 2d 588, 650 (E.D. Pa. 2011); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a meeting of the minds.").

The only allegations of a conspiracy are located at paragraphs 17 and 57 of the Amended Complaint: "At all times relevant and material hereto, the Casterline Defendants acted in concert with and/or conspired with the Exeter Borough Defendants." (Am. Compl. at ¶ 17); "Upon information and belief, the Casterline Defendants have continually and repeatedly conspired with and/or colluded with and/or acted jointly with the Borough Defendants in order to preclude the enforcement of the Exeter R-1 Ordinance. . . ." (*Id.* at ¶ 57). These allegations are purely conclusory in nature and fall short of alleging the existence of an agreement between Borough and Casterline Defendants to deprive them of their First Amendment rights. Because the Amended Complaint fails to allege a conspiracy

13

claim and does not allege that Casterline Defendants are state actors (Am. Compl. at ¶ 17), the Court also dismisses Casterline Defendants from the Retaliation claim on the independent ground that, as private actors, they may not be sued under § 1983 absent an allegation of actions attributable to Borough Defendants. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) (a plaintiff "must point to some action [by the private defendants] that is fairly attributable to the state.").

After granting Defendants' earlier motions to dismiss, the Court provided Plaintiffs with an opportunity to correct the deficiencies in the Complaint. Plaintiffs duly amended their Complaint and provided the Court with significantly greater detail than they had previously. Based on the absence, even after consideration of the newly alleged facts, of a showing of the existence of an agreement between Borough and Casterline Defendants, the Court concludes that Plaintiffs cannot maintain a cause of action for First Amendment Retaliation and conspiracy and that further amendment would be futile. *In re New Jersey Title Ins. Litigation*, 683 F.3d 451, 462 (3d Cir. 2012). Therefore, Plaintiffs' conspiracy claim will be dismissed with prejudice. As such, Plaintiffs' First Amendment Retaliation claim remains against Borough Defendants only.

## Monell Liability for Defendant Borough

To prevail on a 42 U.S.C. § 1983 claim against a municipal entity, Plaintiffs must show that the entity enforced a municipal policy or custom that deprived Plaintiffs of a federal right. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611

14

(1978). The municipal entity's liability cannot be predicated on a theory of *respondeat superior*. *Id.* at 694. Instead, a municipality may be liable for the actions of its employees in the following ways:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted). Plaintiffs argue that Defendant Murawski, as President of the Borough Council, and Defendant Pepe, as Zoning Officer, were decision-makers who had final policymaking authority.

At this time, it is premature for the Court to dismiss the *Monell* claim against Defendant Borough of Exeter because Plaintiffs have alleged that Defendant Murawski, as President of the Borough Council, was aware of Plaintiffs' complaints and this knowledge caused him and the other Borough Defendants to refuse to enforce the Zoning Ordinance and Amended Decision. Defendant Borough may re-assert this claim after discovery has occurred and there is further factual development of the record which shows the extent of Defendant Murawski's and Defendant Pepe's policymaking authority.

### Punitive Damages

Plaintiffs have conceded that punitive damages are not available against Defendant Borough of Exeter or against Defendants Murawski and Pepe in their official capacities.

(Doc. 33, at 13-14). As such, any claims for punitive damages against Borough of Exeter or against Defendants Murawski and Pepe in their official capacities are dismissed. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L. Ed. 2d 616 (1981).[7]

## V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motions to Dismiss (Docs. 27, 29). Any allegations of First Amendment Retaliation by Borough Defendants occurring before April 21, 2009 will be dismissed as time-barred. The claims for punitive damages against Defendant Borough of Exeter and Defendants Murawski and Pepe in their official capacities will be dismissed. Plaintiffs' § 1983 Conspiracy claim will be dismissed. As such, Casterline Defendants will be dismissed from Count I, First Amendment Retaliation.

The remaining claims will be: (1) First Amendment Retaliation against Borough Defendants only, (2) violations of § 501 of the Exeter Borough Zoning Ordinance against all Defendants, and (3) Nuisance against Casterline Defendants only.

Robert D. Mariani
United States District Judge

---

[7] Because there is no parallel state court proceeding, Borough Defendants' argument that the Court should abstain under *Younger v. Harris* is inapplicable. To that same end, the *Rooker-Feldman* doctrine does not preclude the Court from considering this case because Plaintiffs are not state court losers appealing to a federal court to overturn a state court decision. The only state court decision here is the initial October 1988 decision from the Luzerne County Court of Common Pleas preventing the use by the Casterlines of the garage at issue for commercial purposes. This case presents a claim of the violation of that decision and does not seek its reversal.